UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MICHAEL LYNCH,
    Plaintiff,

vs.

Case No.

DR. JOHNATHAN EK; MEDICAL
ADMINISTRATOR, NELLIE BOONE;
WEXFORD HEALTH SOURCES, INC.;
GRIEVANCE OFFICER, JASON GARZA,
    Defendant's.

JURY DEMAND

VERIFIED COMPLAINT

## COMPLAINT

Plaintiff, Michael Lynch, pro se, brings this civil rights action under 42 U.S.C. § 1983 to obtain relief for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution by the deliberate indifference, cruel and ususal punishment, and the willful disregard of the facts in plaintiffs grievances, by employees or agents of the Illinois Department of Corrections("IDOC") to his serious medical needs.

## FEDERAL JURISDICTION AND VENUE

2. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 as a matter arising under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United State Constitution, and under 28 U.S.C. § 1343(a)(3) as a civil action authorized by law to redress the deprivation under color of State law of plaintiffs rights. This Court also has jurisdiction under 42 U.S.C. § 1367 as to related claims in this action for supplemental jurisdiction.

1.

## PARTIES INVOLVED

3. Plaintiff, Michael Lynch, is an individual in custody of the IDOC during all times relevant to this action. Plaintiff is housed at Hill ("Hill") Correctional Facility, P.O. Box 1700, Galesburg, IL 61402.

4. Defendant Johnathan Ek, is an individual who, during all times relevant to the facts alleged in this complaint, was employed by the IDOC as Medical Director for Hill Health Care Unit, and was acting in that capacity under color of State laws. He is employed through Wexford Health Sources, Inc., by the IDOC at 1301 Concordia Court, Springfield, IL 62794. This action is brought against Defendant Ek in his individual and official capacities.

5. Defendant Nellie Boone is an individual who, during all times relevant to the facts alleged in this complaint, was employed by the IDOC as Health Care Unit Medical Administrator, and was acting in that capacity under color of State laws. She is employed through Wexford Health Sources, Inc., by the IDOC at 1327 Linwood Road, Galesburg, IL 61401. This action is brought against Defendant Boone in her individual and official capacities.

6. Defendant Wexford Health Sources, Inc., is a corportation that, during all times relevant to the facts alleged in this complaint, set policies to govern its employees when assessing individuals in custody medical needs, Defendant Wexford was acting in that capacity under color of State laws. Defendant Wexford is a Florida based corporation, which upon information and belief, is a party to a contract with the IDOC to provide medical care to individuals in custody at Hill, and employeed defendant's Ek and Boone. This action is brough against Defendant Wexford in its individual and official capacities.

7. Defendant Garza, is an individual who, during all times relevant to the facts alleged in this complaint, was employed by the IDOC as its grievance officer, and was acting in that capacity under color of State laws. He is employed at Hill at 1327 Linwood Road, Galesburg, IL 61401. This action is brought against Defendant Garza in his individual and official capacities.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff Lynch timely filed and exhausted his grievance from the institutional level through to the Administrative Review Board ("ARB") on appeal and was

denied relief on each level regarding Grievance # 20-12-176E. [See Exhibit Marked 'A' Individual In Custody Grievance]

## FACTUAL ALLEGATIONS

9. Plaintiff Lynch assert that each defendant in this cause denied him substantial rights and protections in violation of his Eighth and Fourteenth Amendment rights to the United States Constitution.

10. The Eighth Amendment violation plaintiff Lynch complains of is manifested through defendant Ek's deliberate infifference to plaintiffs serious medical condition and needs, causing severe pain, suffering , and the loss of the bone structure in plaintiffs left shoulder, inflicting cruel and unusual emotional and physical punishment.

11. The Eighth Amendment violation plaintiff Lynch complains of is manifested through defendant boone deliberate indifference to plaintiff serious medical condition and needs, causing severe pain, suffering, and loss of bone structure in plaintiffs left shoulder, inflicting upon him cruel and unusual emotional and physical punishment.

12. The Eighth Amendment violation plaintiff complains of is manifested through defendant Wexford's policies of requiring patients to undergo physical therapy, regardless of the extent of their injury, as a prerequisite to being provided needed medical care amounting to deliberate indifference, causing severe pain, suffering, and permenant loss of bode structure in plaintiffs left shoulder, inflicting upon him cruel and unusual emotional and physical punishment.

13. The Fourteenth Amendment violation plaintiff complains of is manifested through defendant Garza's failure to acknowledge plaintiffs prior grievance seeking medical treatment, wherein defendant's Ek and Boone stated on the record that plaintiff was instructed to speak with (negotiate his own medical treatment) with the off-site medical contractor during the up-coming appointment, [Ex. Marked 'B' Individsual In Custody Grivance] and compare that with the second grievance filed [Ex. Marked 'A'] and render a decision favorable to plaintiff having his medical needs met.

14. Plaintiff Lynch arrived at Hill October 26, 2016. Prior to arriving at Hill plaintiff had been suffering from an injury to his left shoulder while in Pontiac Correctional Facility ("Pontiac") and was receiving medical treatment from the Pontiac Medical Director, Dr. Andrew Tildon, in the form of an oral analgesic., tramadol.

15. Upon arriving at Hill plaintiff informed the corrections staff that he

3.

was in need of being administered his pain medication, and was told he would be going to the prison hospital soon as part of his orientation. Upon arriving at the hospital, the medical staff there told him they did not give tramadol in the dose he was prescribed and that they would give him a much lesser does and that that dose would be discontinued within a week.

16. Over the years, after 2016 at Hill, plaintiff was required to take physical therapy as a means and method to resolve and cure his medical condition and associated pains. However, physical therapy was causing plaintiff medical condition to become progressively worse and painful.

17. Plaintiff repeatedly requested that the physical therapy be medically discontinued and filed grievances about the pain and suffering from therapy. [Group Ex. Marked 'C'] At that time the institutional physician was Dr. Baustista who stated I would need to sign a refusal for treatment or continue the physical therapy. Plaintiff had no choice but to continue therapy than to refuse treatment.

18. When Dr. Baustista went on vacation Plaintiff sought to get the physician who was working in Dr. Baustista's place to understand his complaint. Dr. Osmondson stated to plaintiff he should stop if the therapy was causing him plain; plaintiff informed Dr. Osmondson that the only way he could discontinue therapy was by the order of his physician. Dr. Osmondson wrote the order for plaintiff to discontinue therapy.

19. Approximately 1½ years passed with plaintiff still in pain and his being prescribed ineffective medication for pain. Eventually Dr. Baustista was replaced by defendanr Ek. Defendant Ek ordered that plaintiff partiscipate in physical therapy, at that time plaintiff informed defendant Ek that he could see from his (plaintiffs) medical records that he had been through therapy off and on for years, that it had been painful for him and served only to worsen his condition causing greater pain.

20 Defendant Ek then informed plaintiff that in order to get to the stage of a collegial review with defendant Wexford to be evaluated by an off-site specialist that plaintiff had to go through the physical therapy first, and that refusal to participate in physical therapy would be rationale enough for defendant Wexford to deny plaintiff treatment by an off-site specialist for his shoulder. That he (defendant Ek) would have to show that he tried everything before requesting that I be sent out to an off-site specialist for treatment.

21. Inspite of how painful it was, plaintiff participated in the physical therapy as best he could, knowing he was under surveillance at all times during therapy.

4.

22. Midway through the course of plaintiffs physical therapy (approximately the end of 2018 or rarly 2019) a physical therapist was hired at Hill (Dr. McEuwin) who examined and instructed plaintiff of the correct way to perform the physical therapy he had been prescribed by defendant Ek.

23. At no time during any of plaintiffs physical therapy sessions, prior to the arrival of Dr. McEuwin, was plaintiff ever supervised. The physical therapy prescribed by Dr. Baustista was perform in an open door room at the prisons hospital, and the therapy prescribed by Dr. Ek was perform at the facility gym under camera surveilance.

24. Sometime after the arrival of Dr. McEuwin he concluded that the physical therapy was causing plaintiff pain and that further therapy would be of no clinical benefit to the plaintiff. Dr. McEuwin stated to plaintiff that he was reccomending to defendant Ek that plaintiff be examined and treat by an orthopedic specialist for his shoulder injury.

25. Rather than adhering to the professional opinion and medical reccomendation of Dr. McEuwin, defendant Ek stated that he was ordering cortisone injections first. The cortisone injection was ineffective.

26. Thereafter, Plaintiff Lynch continued complaining about his pain and suffering to defendant Ek, who would only prescribe the same oral medications for pain management, which did nothing to manage plaintiffs pain. Plaintiff verbally told defendant Ek that the medications he was prescribing was not managing his pain, and that several federal courts had determined that the persistent prescribing the same medications to a patient-known to be ineffective was tantamount to prescribing no medications at all.

27. In December of 2019 defendant Ek insisted that plaintiff try one more round of cortisone injections to his left shoulder even though plaintiff was repeatedly saying to defendant Ek that the first round was ineffective. Not wanting to appear to be refusing treatment plaintiff accepted the second cortisone injection, and it to was ineffective just as the first round had been.

28. In late December plaintiff was assigned to the prisons infirmary because of him having had pneumonia and continued to complain of his shoulder pain and suffering. Defendant Ek then instructed plaintiff that when he next go for his appointment for his right hip to see the orthopedic specialist for him to speak to the doctor then about his left shoulder pain.

5.

29. Although such an act on the part of plaintiff was understandably known among individuals in custody to be forbidden, plaintiff took that as cover from any tentative disciplinary report, and did as defendant Ek instructed him to. [Ex. 'B']

30. During three (3) different appointments to assess plaintiffs hip, as scheduled by defendant Ek, plaintiff spoke with the Orthopedic Specialist, Dr. Gregory Schirer, concerning getting treatment from him for his very painful shoulder. When plaintiff mentioned having Dr. Schirer examine his shoulder. Dr. Schirer ignored plaintiff and continued with his examination of plaintiffs chart relative to his right hip for which he had been contracted for.

31. During a subsequent visit to Dr. Schirer's office plaintiff again attempted tospeak with Dr. Schirer about his left shoulder. Dr. Schirer stated to plaintiff that he could have,"this", conversation with plaintiff.

32. Again, during a subsequent appointment with Dr. Schirer about treating his left shoulder. Dr. Schirer blantantly stated to plaintiff that, unless he was contracted to to perform anything medical with him that he could not go into any other realm than what he was contracted for.

33. Plaintiff subsequent began filing grievances about defendant Ek not providing appropriate medical treatment for his painful left shoulder. In response to plaintiffs grievance, the Health Care Administrator, defendant Boone, stated that plaintiff had been informed by defendant Ek to speak with the off-site Orthopedic Specialist, Dr. Gregory Schirer, during the next scheduled appointment. Defendant Boone listed in her response to plaintiffs grievance a number of dates that plaintiff had been out on appointments to the Orthopedic Specialist, and went on to stated that plaintiff had not done what he was instructed to do. [Ex. Marked 'B']

34. Defendant Boone's response in plaintiffs grievance was clearly stating to plaintiff that is he wanted medical treatment by a qualified specialist for his severly arthritic shoulder that he would have to negotiate his own medical treatment and plaintiff filed a grievance to that affect. [Ex. Marked 'A']

35. Plaintiff Lynch continued complaining to defendant Ek about his pain and suffering due to his left shoulder condition on through to 2021. Defendant Ek then ordered diagnostic imaging to be performed. Based on the results of the radiology report it had been determined that plaintiffs left shoulder was severely arthritic, then defendant Ek stated that due to (plaintiffs) age he would have to expect to live with a certain amount of pain.

36. Plaintiff began having anxiety attacks at the very though of having to live with that degree of pain for the remainder of his life. The attacks became so frequent that plaintiff remained in bed most of the day in darkness, and missing needed meals. At some point plaintiff filed a subsequent grievance about defendant's Ek and Boone requiring him to negotiate his own medical treatment with an off-site orthopedic surgeon. Plaintiff filed the second grievance because it was taking so long for the grievance officer to respond to plaintiffs first grievance about defendants Ek and Boone.

37. Once the grievance officer had investigated plaintiffs allegations he was sent defendant Boones response, wherein she stated that defendant Ek no longer was employed at Hill and that she had not instructed plaintiff in an earlier grievance what he was suppose to have done to acquire medical treatment from an off-site medical contractor.

38. The grievance officer disregarded my second grievance against defendant's Ek and Boone, finding that the second grievance was a Duplicate of the earlier grievance regarding the same matter. [Ex. Marked 'D']

39. Although plaintiffs grievance had been denied by defendant Garza the exposure of defendant's Ek and Boone caused defendant Ek to ensure that the plaintiff was scheduled to be examined by an orthopedic specialist.

40. Plaintiff was examines by orthopedic surgeon, Craig Wilson, who determined through diagnostic imaging that plaintiffs entire should could not be saved and that he would require a complete shoulder replacement surgery to allow him some mobility in his left arm and shoulder. And on May 18, 2021 plaintiff had surgery to replace his entire left shoulder with a prosthetic shoulder attachment to the existing bone structure.

41. Defendant Garza over-looked easily located information to connect the dots to plaintiff not receiving adequate medical treatment that was further delayed because of his failure to properly reach the merit of plaintiffs grievances. Even after defendant Boone reversed herselm and having the true facts of what she originally said on file, defendant Garza allowed defendant Boone to answer the grievance directly and then chose to side with her version of the facts.

CAUSE OF ACTION

FIRST CAUSE OF ACTION:

DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS
AND DENYING HIM EFFECTIVE MEDICAL TREATMENT
Defendant's Ek, Boone, and Wexford

42. Plaintiff repeats and re-alleges the allegations of paragraph 1 through 41, inclusive, as if fully set forth herein.

43. As previously alleged, defendants displayed deliberate indifference to plaintiffs serious medical condition by failing to timely and properly treat the painful symptoms associated with plaintiffs diagnosed medical condition of degenerative bone and joint disease inspite of their actual knowledge of plaintiffs serious need for medical treatment to prevent further progression of his arthritis and their actualy knowledge of plaintiffs continual pain and suffering.

44. The failure of the defendants to provide plaintiff with the necessary treatment for hius serious medical condition constitutes reckless disregard and willful neglect for plaintiffs serious medical condition of his left shoulder.

45. Defendants failure to provide plaintiff the needed medical treatment, inspite of having been aware of his medical condition, as evidenced in his medical file, led to plaintiff having to have his left shoulder surgically removed and replaced with a prosthetic shoulder; and possibly more surgeries as the prosthetic wears.

46. The actions of the defendant's, who had more than four (4) years notice of plaintiffs serious medical condition, and the policy of defendant Wexford let to the unnecessary pain, suffering, and a surgery that could have been avoided had defendant's provided plaintiff the necessary medicsl care.

47. The actions of the defendant's of insisting on continued physical therapy by plaintiff, even though plaintiff conveyed to them that physical therapy was causing more pain than resolving his medical condition was cruel and unusual punishment and deliberate indifference.

48. The foregoing actions and omissions of the defendant's were done under color of State law, and by their deliberate indifference to plaintiffs serious medical needs and was tantamount to cruel and unusual punishment in violation of plaintiffs

rights under the Eighth and Fourteenth Amendments to the United States Constitution.

49. Plaintiffs condition severely worsened over time as a result of the conduct of the defendants as set forth above. Plaintiff also suffers from other harms as well, including the failure to participate in and enjoy certain activities he once could engage in.

SECOND CAUSE OF ACTION:

### MEDICAL NEGLIGENCE, CONSCIOUS DISREGARD, WILLFUL NEGLECT
Defendant's Ek and Boone

50. Plaintiff repeats and re-alleges the allegation of paragragraphs 1 through 41, inclusive, as if fully set forth herein.

51. During all times relevant to the facts alleged in this complaint, defendant Ek was a duly authorized agent and employee of Wexford Health Sources, Inc., and or the IDOC, acting within the scope of his agency and employment.

52. During all times relevant to the facts alleged in this complaint, defendant Boone was a duly authorized agent and employee of Wexford Health Sources, Inc., and or the IDOC acting within the scope of here agency and employment.

53. The defendant's have duties to provide reasonable medical care to the plaintiff, including treatment of his serious medical condition and treatment to avoid his pain and suffering.

54. The defendant's have breached this duty by failing to properly treat painful symptoms of plaintiff's serios medical condition, and further by continuing to treat plaintiff with medications inspite of the knowledge from plaintiff that the medications were ineffective and tantamount to providing plaintiff no medications at all to treat his pain and suffering.

55. The defendants breah has proximately caused severe injury to plaintiff, including pain and suffering and worsening of his already serious medical conditions.

THIRD CAUSE OF ACTION:

### PLAINTIFF'S RIGHT TO DUE PROCESS WAS DENIED HIM BY THE GRIEVANCE OFFICER WHO IGNORED RELEVANT FACTS BEFORE HIM OF PLAINTIFF BEING DENIED MEDICAL CARE
Defendant Garza

56. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 41, inclusive, as if fully set forth herein.

57. As previously alleged, during the course of plaintiff being denied appropriate medical care for his seriou medical need, causing him severe pain and suffering, by defendant's Ek and Boone, defendant Garza had previously reviewed an earlier grievance filed by plaintiff about not being provided proper medical care for his left shoulder injury. In the response section of the grievance dated December 20, 2019 (Counselor's Response Date 12/26/19) defendant Boone stated to the counselor she had spoke with Dr. Ek and was told that plaintiff Lynch was to discuss my medical concerns with "ortho."

58. The dates defendant Boone provided to the inquiring counselor appearing in the counselor's response section of the grievance are dates plaintiff was taken to see and orthopedic physician for a condition he had been contracted for that was unrelated to the condition plaintiff was seeking treatment for that no off-site phycian had yet been contracted for. [Ex. Marked 'B']

59. One year later, defendant's Ek and Boone were literally still telling me, in passing to speak with the orthopedic physician about me left shoulder injury. Plaintiff subsequently filed a grievance December 19, 2020 concerning defendant's Ek and Boone requiring hing him to negotiate his medical care and treatment with the off-site orthopedic physician.

60. Defendant Garza would not review plaintiff's 12/19/20 grievance, finding that it was a duplicate of an earlier grievance from December 20, 2019. Defendant Garza marked "Duplicate" on the lower left corner. However, the ARB did review the grievance defendant Garza marked, "Duplicate" and rendered an decision on the 12/19/20 grievance.

61. Defendant Garza was keenly aware of both grievances at the time he received the second 12/19/20 grievance against defendant's Ek and Boone.

62. Plaintiff's 12/20/19 grievance was for "Inadequate medical Treatment", and his 12/19/20 grievance concerning defendants Ek and Boon requiring plaintiff to ne-

10.

gotiate the terms of medical treatment with an off-site medical contractor; a thing no individual in custody would dare do. [Ex.'s 'A' & 'B']

63 Defendant Garza had a duty, under the 14th amendment, to investigate all written material on file in connection to plaintiffs claim to arrive at the appropriate conclusion that plaintiff was suffering from a severe medical condition that required immediate medical treatment, and that defendant Boone had not been honest in her December 23, 2020 response where she obfuscatated her response to appear as though she never parroted defendant Ek directions to plaintiff in her December 26, 2019 response to plaintiffs grivances. [Ex.'s 'A' & 'B']

64. The foregoing actions of defendant Garza was done under color of State law, in denial of plaintiffs right to due process, and the deliberate indifference to plaintiffs serious medical condition in violation of the Eighth and Fourteenth Amendments to the United States Constitution, causing plaintiff unnecessary emotional and physical suffering.

FOURTH CAUSE OF ACTION:

<u>DELIBERATE INDIFFERENCE AND CRUEL AND UNUSUAL PUNISHMENT
CAUSED BY A CUSTOM, PRACTICE OR POLICY CAUSING PLAINTIFF'S INJURY</u>
Defendant Wexford Health Sources, Inc.

65. Plaintiff repeates and re-alleges the allegations of paragraphs 1 through 41, inclusive, as if fully set forth herein.

66. As previously alleged, during the course of plaintiff being denied the appropriate medical care for his left shoulder injury by defendant Ek, that caused him severe pain and suffering, this denial was done as a common practice and custom at Hill, and according to defendant Ek's statement to plaintiff that, plaintiff had to undergo physical therapy before he could be considered for examination and treatment by an off-site specialist, even after repeated sessions of physical therapy over a number of years by different Wexford employees, convinced plaintiff that such requirement is a policy of defendant Wexford.

67. Plaintiffs medical condition severely worsened as a direct result of the custom, practice, and/or policy of defendant Wexford, as plaintiff has suffered other harms as well; including, but not limited to mental stress.

11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request this Court to find in favor on all claims against each defendant of this Complaint and award the following relief:

a) Compensatory and Punitive Damages in an amount to be determined and proven at trial.

b) Such other relief as this Court deems proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims so triable.

Date: February ___, 2022.

Respectfully Submitted,

*Michael Lynch*

Michael Lynch, pro se.

OFFICIAL SEAL
ANDREW C STODOLKIEWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires Nov. 02, 2025

*Andrew Stodolkiewicz* 2-10-22

12.

```
STATE OF ILLINOIS  )
                   )  ss.
COUNTY OF KNOX     )
```

PLAINTIFF'S AFFIDAVIT IN SUPPORT OF HIS COMPLAINT UNDER 42 U.S.C. § 1983

MICHAEL LYNCH, being duly sworn, deposes and says:

1. I am the plaintiff in the attached Complaint under 42 U.S.C. § 1983. I make this affidavit in support of my Complaint under the statute.

2. The Complaint in this case alleges that plaintiff was subjected to the deliberate indifference, willful neglect, conscious disregard, cruel and unusual mental and emotional punishment, and due process violations at the hands of defendant's Johnathan Ek, Nellie Boone, Jason Garza, and Wexford Health Sources, Inc., all due to a pattern of practice, custom, and/or policy of defendant Wexford, who required plaintiff to go through series of physical therapy sessions, amounting to a number of years, knowing that such therapy was not beneficial to plaintiff, even knowing that the physical therapy was causing a worsening of plaintiff condition.

3. Defendant Ek, during a consultation with plaintiff about his shoulder pain and physical therapy being unsuccessful, told plaintiff that defendant Wexford would not grant plaintiff the opportunity to be examined by an off-site orthopedic specialist unless he went through the steps of physical therapy, even though plaintiff had completed sessions of physical therapy prescribed by other physicians at Hill, and inspite of the pain plaintiff had repeatedly stated to defendat Ek that physical therapy was causing him.

3. Inspite of my having completed physical therapy as prescribed by defendant Ek, and the physical therapist, Dr. McEuwin, recommendating that I be examined by an orthopedic specialist, defendant Ek disregarded the recommendations of the physical therapist, and ultimately instructed me to speak with the orthopedic specialist about my left shoulder injury when I next consult with him about my right hip.

4. After filing grievances about not being provided medical treatment for my left shoulder injury, defendant Nellie Boone spoke with defendant Johnathan Ek, who told her he had instructed me to speak with the orthopedic surgeon on my next consultation with him, and also provided the dates I had seen the orthopedic surgeon;

implying the number of opportunities I had to negotiate my medical treatment with the off-site medical contractor. Defendant Nellie Boone went to to parrot defendant Ek's advise to me, to the investigating counselor. [Exhibit 'B' Attached To Complaint]

5. After seeing defendant Ek numerous times after my 12/19/19 grievance and his continued advice to me to negotiate my own medical treatment with the off-site medical contractor, I filed a subsequent grievance 12/20/20 to inform the IDOC that defendant Ek was requiring me to negotiate my own medical care with an off-site medical contractor. Defendant Nellie Boone again responded to the second grievance I wrote and stated that defendant Ek no longer works at Hill, and went on to cite the rules acquisition of an off-site medical contractor for and individual in custody, as if she never went alond with defendant Ek's advisement to me in 2019. [Ec. 'A' Attached To Complaint]

6. Defendant Garza, inspite of having access to all of my previous grievances made a finding against my grievance seeking medial treatment by labeling my 12/20/20 grievance as a duplicate, indicating he was aware of the contents of my 12/19/19 grievance and the response defendant Boone had given, as stated to her by defendant Ek.

7. It was only after the exposure of my last (12/20/20) grievance that defendant Ek completed his due diligence and arranged for me to be examined by an orthopedic specialist. It was the finding of the orthopedic specialist that so much damage had been done to my left shoulder that no amount of serjury could cure that problem, and that the only solution would be a total left shoulder replacement surgery, which I consenting to.

8. The loss of my natural should and the years of pain and suffering I experienced was caused by the total disregard for my health, pain and suffering due to a pattern of practice, custom, and/or policy by each of the defendant's.

9. Over the course of years the pain had risen to such levels that I would experience anxiety attacks at the onset of such pain or thinking of how severe the pain was capable of becoming. I could not seek psychological help for the problem of anxiety because I did not want any mental health issues appearing on my records that could possibly one day impede my release from prison or include certain conditions.

FURTHER AFFIANT SAYETH NOT.

Michael Lynch

OFFICIAL SEAL
ANDREW C STODOLKIEWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires Nov. 02, 2025

2-10-22

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MICHAEL LYNCH,
    Plaintiff,

vs.                                                                No.

DR. JOHNATHAN EK, et. al.,
    Defendants.

## DECLARATION OF VERIFICATION

I, Michael Lynch, Declare that the facts stated in the attached Complaint, pursuant to 42 U.S.C. § 1983, are true to the best of my knowledge, and that the facts stated to be on information and belief are true to the best of my knowledge and belief.

Michael Lynch